Citation Nr: 1132126 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 07-22 963 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES


1. Entitlement to an increased disability evaluation for mechanical low back pain, currently evaluated as 10 percent disabling.

2. Entitlement to an increased disability evaluation for degenerative disc disease of the cervical spine, currently evaluated as 10 percent disabling.


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

M. Young, Counsel


INTRODUCTION

The Veteran served on active duty from June 1962 to June 1967, and from February 1981 to September 1996.

This matter initially arose before the Board of Veterans' Appeals (Board) on appeal from an August 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office in St. Petersburg, Florida (RO), which, in pertinent part, denied increased ratings for mechanical low back pain, and disc disease of the cervical spine, as well as entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities.

In an August 2007 rating decision, the RO granted a TDIU, effective October 23, 2006. Because the Veteran was awarded a complete grant of the benefit sought with respect to that matter, it is not currently on appeal. See AB v. Brown, 6 Vet. App. 35 (1993).

In July 2008, the Board remanded the issues on appeal for further development. The issues were again remanded by the Board in February 2010 for additional development. The Board finds that the agency of original jurisdiction (AOJ) substantially complied with the February 2010 remand orders and no further action is necessary in this regard. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). The issues have since returned to the Board for further appellate consideration. 


FINDINGS OF FACT

1. The Veteran's service-connected low back disability is manifested by symptoms of pain. The evidence does not support findings that the Veteran's service-connected low back disability results in forward flexion of the thoracolumbar spine greater than 30 degrees, but not greater than 60 degrees; or a combined range of motion of the thoracolumbar spine not greater than 120 degrees; or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis; or intervertebral disc syndrome. There is x-ray evidence of arthritis, but there is no evidence of ankylosis or separately compensable objective neurological abnormalities. 

2. The Veteran's service-connected cervical spine disability is manifested by symptoms of pain. The evidence does not support findings that the Veteran's service-connected cervical spine disability results in forward flexion greater than 15 degrees but not greater than 30 degrees or the combined range of motion not greater than 170 degrees; or muscle spasms or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. There is x-ray evidence of arthritis, but there is no evidence of ankylosis, incapacitating episodes requiring bed rest prescribed by a physician and treatment by a physician, or separately compensable associated objective neurological abnormalities. 


CONCLUSIONS OF LAW

1. The criteria for an evaluation in excess of 10 percent for mechanical low back pain have not been met. 38 U.S.C.A. § 1155, 5103, 5103A, 5107 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.159, 4.1, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code (DC) 5237 (2010).

2. The criteria for an evaluation in excess of 10 percent for degenerative disc disease of the cervical spine have not been met. 38 U.S.C.A. § 1155, 5103, 5103A, 5107 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.159, 4.1, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code (DC) 5243 (2010). 





REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2010).

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183 (2002). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

In this case, pursuant to the Board remand directive, a letter satisfying the notice requirements under 38 C.F.R. § 3.159(b)(1) was sent to the Veteran in April 2010, subsequent to the initial RO decision that is the subject of this appeal. The letter informed him of what evidence was required to substantiate the claim and of his and VA's respective duties for obtaining evidence. With respect to Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), the Appeals Management Center (AMC) provided the Veteran with notice of what type of information and evidence was needed to establish a disability rating, as well as notice of the type of evidence necessary to establish an effective date. Defects as to the timeliness of the statutory and regulatory notice are rendered moot because the Veteran's claims on appeal have been fully developed and re-adjudicated by an agency of original jurisdiction after notice was provided. Mayfield, 444 F.3d 1328.

VA also has a duty to assist the Veteran in the development of his claims. This duty includes assisting him in the procurement of service treatment records and other pertinent records, and providing an examination when necessary. See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The RO has obtained VA treatment records, and the Veteran was afforded VA examinations of the spine in May 2006 and June 2010. 
Significantly, neither the Veteran nor his representative has identified, and the record does not otherwise indicate, any outstanding additional evidence that is necessary for a fair adjudication of the claims. Hence, no further notice or assistance is required to fulfill VA's duty to assist in the development of the claims. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio, 16 Vet. App. 183. The Board finds that all necessary development has been accomplished; therefore, appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). 

II. Increased Ratings Claims

A. Factual Background

The Veteran's low back disability is currently assigned a disability rating of 10 percent, effective June 30, 2000, under Diagnostic Code 5237. The Veteran's cervical spine disability is currently assigned a disability rating of 10 percent disabling, effective October 1, 1996, under Diagnostic Code 5243. The Veteran filed an informal claim in April 2006 seeking higher ratings.

Review of the relevant medical evidence reveals the Veteran was seen at a VA outpatient clinic in July 2005. He presented in no acute distress for pain management of his neck, shoulder, and upper and lower back. Examination of the back revealed tenderness over the paravertebral muscles of the thoracic and lumbar areas. The assessment was chronic back pain, and the recommendation was to continue Percocet.

The report from a VA examination in May 2006 shows the Veteran had complaints of low back pain or degenerative disc disease. He stated that his disabilities had progressively worsened since the military and that physical therapy had not helped. He further stated that he had undergone an epidural in the lower back which did not help and a series of three injections, twice for the upper back, which also did not help. He reported that his symptoms were episodic midline, diffuse, and level six discomfort nearly every day, and that they came with exertion such as lifting, twisting, or bending for 45 minutes or more. He stated that he got sharp pain accompanied by heavy breathing upon exertion, such as 30 to 45 minutes of mowing the lawn, and also with certain positions such as sitting in his truck without a lumbar support. It was also noted that the Veteran had two motor vehicle accidents in 1999/2000 and in 2001. In one accident, he was rear-ended and hurt his back, and in the other accident, a locked brake caused him to hit a pickup truck and again hurt his back.

It was also indicated that the Veteran had had no periods of incapacitation and could perform his activities of daily living. In addition, he denied constitutional symptoms of numbness, weakness, and bladder or bowel dysfunction. He indicated that he had never been hospitalized nor prescribed bed rest for his back.

With regard to his cervical spine, the Veteran reported that he had burning and prickling in the right side of the neck and into the trapezius area of his shoulder. He stated that it was a constant level of eight that never resolved. He maintained that recently he had started to get tingling and numbness in the fourth and fifth fingers on the left hand and the fifth finger on the right hand. The Veteran could not remember when he was last treated for his neck but disclosed that he had had physical therapy, which he said did not help. He had not had any injections or surgeries on the neck. He reported that the neck was what kept him from sleeping well because of the pain and the numbness in the fingers and his inability to get comfortable. It was noted that he had had no periods of incapacitation or difficulty doing his activities of daily living. He indicated that he had never been hospitalized nor had bed rest prescribed for his neck. 

On physical examination, the Veteran's posture and gait were normal. His back and neck were bilaterally symmetric without gross deformities or significant scoliosis. There was no increased kyphosis or lordosis. There was also no atrophy, hypertrophy, palpable spasms, or tenderness. Deep tendon reflexes were +2/4 and equal bilaterally for the triceps, brachioradialis, patella, and Achilles reflexes. Straight leg raising was negative. Strength testing to gravity and resistance was within normal limits for his age and bilaterally equal. There was bilaterally equal and normal sensation to pinprick, dull, and light touch, with the exception of slight decreased pinprick on the left fourth and fifth fingers and the right fifth finger. The rest of the extremities were intact. The Veteran was unable to do toe-walking because of a right toe surgery. He was able to do good heel walking. He was very unsteady for heel-to-toe walking, which was not inconsistent with his age. 

On repetitive range of motion testing of the thoracolumbar spine, forward flexion was from zero to 80 degrees and limited by difficulty. Extension was from zero to 20 degrees and limited by difficulty. Left and right lateral flexion was from zero to 20 degrees and limited by discomfort. Left and right lateral rotation was from zero to 45 degrees. X-rays taken of the lumbar spine revealed normal findings.

On repetitive range of motion testing of the cervical spine, forward flexion was from zero to 35 degrees and limited by difficulty. Extension was from zero to 35 degrees and limited by difficulty. Left and right lateral flexion was from zero to 30 degrees and limited by discomfort. Left and right lateral rotation was from zero to 60 degrees and limited by difficulty. 

With regard to the DeLuca provisions, the examiner noted that additional limitation due to repetitive use or flare-ups could not be determined without resort to mere speculation. It was further noted that there was no discomfort or difficulty with range of motion testing, nor effusions, edema, erythema, tenderness, or palpable deformities found except as previously noted. In addition, the examiner noted that the Veteran was independent in his activities of daily living. He did not work and reported being unable to work due to an inability to do lifting, twisting, and bending repetitively for greater than 45 minutes. The examiner commented that there were no disabilities on the examination that would cause impairment to his activities of daily living or prevent employability for light or sedentary work. The diagnoses were cervical degenerative disc disease and lumbar degenerative disc disease. The examiner found that the Veteran's C8 sensory radiculopathy was not explained by the objective cervical x-rays and concluded that the Veteran's cervical radicular symptoms were more likely than not due to peripheral ulnar neuritis and not related to or caused by his cervical spine disability. 

The report from a VA examination of the spine conducted in June 2010 indicated there was a review of the claims folder and medical records by the examiner. The Veteran reported there was no history of hospitalizations or surgery and stated that trauma to his spine occurred from an explosion in 1966 when he fell from a truck and from two post-service motor vehicle accidents. He denied any history of urinary problems, fecal incontinence, or obstipation. He reported he had numbness, paresthesias, and leg or foot weakness. He also reported a history of fatigue, stiffness, weakness, spasms, and pain. He described the location of the pain as bilateral paraspinals from C1 level of the base of the neck and right L2-S1 paraspinals, right hip. The onset of his neck pain was from bending, lifting, and twisting. The onset of his low back pain was from standing, bending, lifting, and twisting. He reported that the neck pain was daily and constant with radiating numbness in the ulnar distribution. He also reported his low back pain as daily and constant, but there was no radiation of pain. It was noted that the Veteran had had no physician-ordered bed rest with respect to his spine disabilities. The Veteran reported that his neck pain had worsened because he had more sharp pain that lasted longer and he had to lie down for relief. He stated that his back pain had worsened because he had sharper pain, more severe muscle spasm, and he had to lie down for relief. He also complained of night stiffness in his feet. He stated that pain was the main problem limiting his motion of the neck and back.

On physical examination, the Veteran's posture and gait were normal. There was no kyphosis, lumbar flattening, lumbar lordosis, scoliosis, reverse lordosis, cervical spine ankylosis, or thoracolumbar spine ankylosis. Examination of the muscles of the cervical and thoracic sacrospinalis revealed no spasm, atrophy, guarding, pain with motion, tenderness, or weakness. A detailed motor examination showed active movement against full resistance (5/5). He had normal muscle tone, and there was no muscle atrophy. Sensory examination was normal for vibration, pain (pinprick), light touch, and position sense. Reflex examination was primarily 1+ or hypoactive. 

Range of motion of the cervical spine showed flexion from zero to 55 degrees and extension from zero to 50 degrees. Left and right lateral flexion was from zero to 30 degrees, left lateral rotation was from zero to 45 degrees, and right lateral rotation was from zero to 50 degrees. There was no objective evidence of pain on active range of motion or following repetitive motion. There were also no additional limitations after three repetitions of range of motion. 

Range of motion of the thoracolumbar spine showed flexion from zero to 90 degrees and extension from zero to 30 degrees. Left lateral flexion was from zero to 25 degrees, right lateral flexion was from zero to 30 degrees, and left and right lateral rotation was from zero to 25 degrees. There was no objective evidence of pain on active range of motion or following repetitive motion. There were also no additional limitations after three repetitions of range of motion. 

The examiner noted that although the range of motion of the spine was reduced, it represented "normal" for the Veteran due to other factors not related to his spine disability. He further explained that the Veteran's lower back motion was compatible with his age. Rotation and lateral bending of the cervical spine were decreased. Further, it was noted that sitting straight leg raising was negative, and the spine could be flexed 80 to 90 degrees. Active straight leg raising was possible to 60 degrees bilaterally with hamstring tightness and low back pain. There was no radicular pain. The examiner observed that the Veteran moved well without obvious pain or muscle spasm. It was noted that there were no incapacitating episodes due to intervertebral disc syndrome (IVDS). 

The Veteran described numbness in the ulnar nerve distribution of the left arm. On examination of the ulnar nerve, there was no motor weakness. Discrimination was decreased in the ring and small fingers, and there was a loss of light touch sensation. Elbow flexion test, where the elbow was flexed for one to two minutes, was positive and reproduced his symptoms. However, Tinel's was negative, and there was no subluxation of the ulnar nerve. The diagnoses were degenerative disc disease of the cervical spine, status post C3-C4 fusion, facet arthrosis of L5-S1 by current x-rays, and disc desiccation and small L5-S1 bulge consistent with normal aging process. 

X-ray findings of the lumbar spine showed normal vertebral body alignment maintained with no evidence of fracture or subluxation. There was no instability on flexion or extension views. Intervertebral disc spaces were well-maintained. There was mild unilateral arthrosis of the left L5-S1 facet. The sacroiliac joints were normal. The impression was mild degenerative changes of the left L5-S1 facet. X-rays of the cervical spine revealed the C3 and C4 vertebral bodies were fused. There was normal alignment maintained with no evidence of compression fracture or subluxation. There was no instability on flexion or extension views. Advanced degenerative disc disease changes were present at C4-5, C5-6, and C6-7 manifested by disc space narrowing and osteophyte formation. The impression was post-operative and degenerative changes of the cervical spine. 

The examiner further described motion loss in the cervical spine as 15 degrees of lateral bending to both the right and left, 35 degrees rotation to the left, and 30 degrees rotation to the right. Motion loss in the lumbar spine was described as 5 degrees of rotation to the left and right and 5 degrees of lateral bending to the left side. The examiner noted that these values were not the Veteran's range of motion at the present examination, but instead represented the range of motion lost when his current ranges of motion on examination were subtracted from normal range of motion values for the spine. He noted that there was no evidence of weakness, fatigability, or incoordination. The Veteran stated that only pain limited his function. The examiner noted that the Veteran stated that he did not have true flare-ups of his pain. His constant pain level was six, but would increase to level eight with certain activities. However, he had pain daily and constantly by history. "Flare-ups" in the spine template appeared to be episodes of significant increase in discomfort occurring at intervals longer than one week, not symptoms varying over a few days. In addition, the examiner reported no clinical findings of neurological deficit, including paralysis or numbness. Nor did he find signs of lumbar radiculopathy or cervical radiculopathy. 

The examiner opined that the Veteran was cooperative, had no pain behavior, and moved well around the examination room. The examiner commented "I don't understand[,] if his problem is severe, why he takes no medication and has had no medical treatment recently."


B. Legal Criteria

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule), which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. If there is a question as to which evaluation to apply to the Veteran's disability, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When reasonable doubt arises as to the degree of disability, such doubt will be resolved in the Veteran's favor. 38 C.F.R. § 4.3. 

The Board has considered the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of his disability in reaching its decision. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). Where an increase in an existing disability rating based on established entitlement to compensation is at issue, the present level of disability is the primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, the Court has held that VA's determination of the "present level" of a disability may result in a conclusion that the disability has undergone varying and distinct levels of severity throughout the entire time period the increased rating claim has been pending. See Hart v. Mansfield, 21 Vet. App. 505 (2007). That is, the Board must consider whether there have been times when the Veteran's disability has been more severe than at others. If so, the Board may "stage" the rating. 

The relevant temporal focus for adjudicating the level of disability of an increased rating claim is from one year before the claim was filed (informal claim filed in April 2006) until VA makes a final decision on the claim. See Hart, 21 Vet. App. 505 See also 38 U.S.C.A. § 5110(b)(2); 38 C.F.R. § 3.400(o)(2).

When an evaluation of a disability is based on limitation of motion, the Board must also consider, in conjunction with the otherwise applicable diagnostic code, any additional functional loss the Veteran may have sustained by virtue of other factors as described in 38 C.F.R. §§ 4.40 and 4.45. DeLuca v. Brown, 8 Vet. App. 202, 206 (1995). Such factors include more or less movement than normal, weakened movement, excess fatigability, incoordination, pain on movement, swelling, and deformity or atrophy of disuse. The provisions of 38 C.F.R. § 4.40 state that disability of the musculoskeletal system is primarily the inability, due to damage or inflammation in parts of the system, to perform normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. A finding of functional loss due to pain must be supported by adequate pathology and evidenced by the visible behavior of the claimant. 38 C.F.R. § 4.40; Johnston v. Brown, 10 Vet. App. 80, 85 (1997). 

Disabilities of the spine are evaluated under the General Rating Formula for Diseases and Injuries of the Spine: with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease. A 10 percent rating is assigned for forward flexion of the thoracolumbar spine greater than 60 degrees, but not greater than 85 degrees; or forward flexion of the cervical spine greater than 30 degrees, but not greater than 40 degrees; or combined range of motion of the thoracolumbar spine greater than 120 degrees, but not greater than 235 degrees; or combined range of motion of the cervical spine greater than 170 degrees, but not greater than 335 degrees; or muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or vertebral body fracture with loss of 50 percent or more of the height. 

A 20 percent rating is assigned for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 
A 30 percent evaluation is assigned for favorable ankylosis of the entire cervical spine. A 40 percent rating requires evidence of unfavorable ankylosis of the entire cervical spine; or, forward flexion of the thoracolumbar spine to 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. A 50 percent evaluation will be assigned with evidence of unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent rating requires evidence of unfavorable ankylosis of the entire spine. 

Note (1): Evaluate any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, separately, under an appropriate diagnostic code. Note (2): (See also Plate V). For VA compensation purposes, normal forward flexion of the cervical spine is zero to 45 degrees, extension is zero to 45 degrees, left and right lateral flexion is zero to 45 degrees, and left and right lateral rotation is zero to 80 degrees. Normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion is zero to 30 degrees, and left and right lateral rotation is zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion. 

Note (5): For VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243. 

If disc disease is present, then the Veteran's spine disability also may be evaluated under the Formula for Rating Intervertebral Disc Syndrome (IVDS) Based on Incapacitating Episodes. See Note to 38 C.F.R. § 4.71a, DC 5243. Under this Formula, a 10 percent rating requires incapacitating episodes having a total duration of at least one week but less than two weeks during the past 12 months; a 20 percent rating requires incapacitating episodes of at least two weeks but less than four weeks during the past 12 months; a 40 percent rating requires incapacitating episodes of at least four weeks but less than six weeks during the past 12 months; and a 60 percent rating requires incapacitating episodes of at least six weeks during the past 12 months. An incapacitating episode is a period of acute signs and symptoms due to IVDS that requires bed rest and treatment "prescribed by a physician." Id. 

In addition, any associated objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, are to be evaluated separately under an appropriate diagnostic code. See 38 C.F.R. § 4.71a, DCs 5235-5242, Note (1). 

Arthritis shown by X-ray studies is rated based on limitation of motion of the affected joint. When limitation of motion would be noncompensable under a limitation of motion code, but there is at least some limitation of motion, a 10 percent rating may be assigned for each major joint so affected. 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5010 (2010). Diagnostic Code 5010, used for rating traumatic arthritis, directs that the evaluation of arthritis be conducted under Diagnostic Code 5003, which states that degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5010 (2010). When, however, the limitation of motion is noncompensable under the appropriate diagnostic codes, a rating of 10 percent may be applied to each such major joint or group of minor joints affected by limitation of motion. The limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5010 (2010). In the absence of limitation of motion, X-ray evidence of arthritis involving two or more major joints or two or more minor joint groups, will warrant a rating of 10 percent; in the absence of limitation of motion, X-ray evidence of arthritis involving two or more major joint groups with occasional incapacitating exacerbations will warrant a 20 percent rating. The above ratings are not to be combined with ratings based on limitation of motion. 38 C.F.R. § 4.71a, Diagnostic Code 5003, Note 1 (2010). 

Although there is X-ray evidence of arthritis in the lumbar and cervical spine, the evidence does not show that the arthritis involves two or more major joint groups with occasional incapacitating exacerbations. Therefore, the criteria listed under Diagnostic Code 5003 cannot serve as a basis for increased ratings for the lumbar spine and cervical spine disabilities. 38 C.F.R. § 4.14 (2010). The Board will therefore discuss the applicability of the other regulatory criteria. 

C. Analysis

1. Mechanical Low Back Pain

Applying the criteria to the facts of this case, the Board finds no basis to assign a rating higher than 10 percent for the Veteran's low back disability. The evidence for consideration primarily includes two VA examination reports (May 2006 and June 2010), neither of which indicate his low back disability meets any of the criteria for a rating higher than 10 percent.

The range of motion of the Veteran's thoracolumbar spine was tested during the two VA examinations he had in May 2006 and June 2010. The May 2006 VA examination report notes that his thoracolumbar spine demonstrated 80 degrees of flexion and 20 degrees of extension and right and left lateral flexion, and 45 degrees of right and left rotation, for a combined range of motion of 230 degrees. The June 2010 VA examination report notes that the lumbar spine demonstrated 90 degrees of flexion, 30 degrees of extension, left lateral flexion was from zero to 25 degrees, right lateral flexion was from zero to 30 degrees, and left and right lateral rotation was from zero to 25 degrees, for a combined range of motion of 225 degrees. Further, there was no kyphosis, lumbar flattening, lumbar lordosis, scoliosis, or reverse lordosis. Examination of the muscles of the thoracic sacrospinalis revealed no spasm, atrophy, guarding, pain with motion, tenderness, or weakness. The examiner noted that there was no objective evidence of pain on active range of motion. Nor was there objective evidence of pain following repetitive motion. There were also no additional limitations after three repetitions of range of motion. It was further noted that although the range of motion was reduced, it represented "normal" for the Veteran due to other factors not related to his spine disability. 

In light of these findings, there is no basis to assign a disability rating higher than 10 percent under the General Rating Formula for Diseases and Injuries of the Spine. Both reports show that the Veteran's thoracolumbar spine demonstrated flexion greater than 60 degrees, with a combined range of motion greater than 120 degrees. Accordingly, a disability rating higher than 10 percent is not available under the General Rating Formula for Diseases and Injuries of the Spine.

Since there is motion in every direction, there is no indication of favorable or unfavorable ankylosis of the entire thoracolumbar spine (referring to the combined thoracic and lumbar segments). Ankylosis is stiffening or fixation of the joint as the result of a disease process, with fibrous or bony union across the joint. See Dinsay v. Brown, 9 Vet. App. 79, 81 (1996) citing Dorland's Illustrated Medical Dictionary at 86 (27th ed. 1988) (Ankylosis is "immobility and consolidation of a joint due to disease, injury, or surgical procedure."); see also Coyalong v. West, 12 Vet. App. 524, 528 (1999). See, too, Lewis v. Derwinski, 3 Vet. App. 259 (1992) [citing Saunders Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health at 68 (4th ed. 1987)]. Moreover, Note (5) to DCs 5235-5242 indicates that for VA compensation purposes, fixation of a spinal segment in neutral position (0 degrees) always represents favorable ankylosis whereas unfavorable ankylosis is a condition in which the entire cervical spine, entire thoracolumbar spine, or the entire spine is fixed in flexion or extension. Neither is the case here, however.

In addition, there is no functional loss due to pain, weakness, fatigability, or incoordination of the thoracolumbar spine that would otherwise warrant assigning a higher rating. 38 C.F.R. §§ 4.40, 4.45, and 4.59. See DeLuca, 8 Vet. App. at 204-08. The May 2006 VA examiner noted that additional limitation due to repetitive use or flare-ups could not be determined without resort to mere speculation. However, the June 2010 examiner noted there was no objective evidence of pain on active range of motion, nor was there objective evidence of pain following repetitive motion. There were also no additional limitations after three repetitions of range of motion. He further noted there was no evidence of weakness, fatigability, or incoordination. At that time, the Veteran reported that only pain limited his function. The examiner also noted that the Veteran stated that he did not have true flare-ups of his pain. It was noted that his constant pain level was six, but would increase to level eight with certain activities. However, he had pain daily and constantly by history. The examiner noted that "Flare-ups" in the spine template appeared to be episodes of significant increase in discomfort occurring at intervals longer than one week, not symptoms varying over a few days. Under these circumstances, there is no basis for a rating higher than 10 percent in light of the factors set forth in 38 C.F.R. §§ 4.40, 4.45, 4.59, and DeLuca. 

The Board also finds no basis to assign a rating higher than 10 percent under Diagnostic Code 5243 for IVDS. The next higher rating of 20 percent requires at least two weeks of incapacitation prescribed by a physician. The Veteran has consistently denied any incapacitating episodes. In addition, it was noted in the examination reports that the Veteran had never been hospitalized nor had physician-ordered bed rest with respect to his spine disabilities. Thus, he is precluded from a rating higher than 10 percent under diagnostic Code 5243.

Additionally, in the May 2006 VA examination report, it was noted that the Veteran denied symptoms of numbness, weakness, and bladder or bowel dysfunction. However, during the June 2010 VA examination, he reported that he had numbness, paresthesias, and leg or foot weakness. This is significant because Note (1) to the General Rating Formula (DCs 5235-5242) specifies that any associated objective neurologic abnormalities should be separately evaluated under an appropriate diagnostic code. This often includes consideration of whether the disability involves paralysis of the sciatic nerve. 

Such neurological manifestations are rated pursuant to DC 8520, which pertains to paralysis of the sciatic nerve. Under this provision, mild incomplete paralysis warrants a 10 percent disability rating; moderate incomplete paralysis warrants a 20 percent disability rating; moderately severe incomplete paralysis warrants a 40 percent disability rating; and severe incomplete paralysis with marked muscular atrophy warrants a 60 percent disability rating. An 80 percent disability rating is warranted for complete paralysis, where the foot dangles and drops, there is no active movement possible of the muscles below the knee, and flexion of the knee is weakened or (very rarely) lost. See 38 C.F.R. § 4.124a, DC 8520.

The term "incomplete paralysis" with peripheral nerve injuries indicates a degree of loss or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to the varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for mild, or at most, the moderate degree. See Note at "Diseases of the Peripheral Nerves" in 38 C.F.R. § 4.124(a).

While the Veteran reported some neurologic symptoms, on objective examination in June 2010, the examiner reported there were no clinical findings of neurological deficit including paralysis or numbness, nor did he find signs of lumbar radiculopathy. In the absence of any objective neurological findings, there is no basis to grant a separate compensable rating under 38 C.F.R. § 4.124a, DC 8520.

In summary, the Board finds that the preponderance of the evidence is against a disability rating in excess of 10 percent for the Veteran's service-connected mechanical low back pain. 38 C.F.R. § 4.3. 

2. Degenerative Disc Disease of the Cervical spine

The Veteran's service-connected cervical spine disability is evaluated as 10 percent disabling under the Formula for Rating IVDS. See 38 C.F.R. § 4.71a, Diagnostic Code 5243. On review, the Board finds that an evaluation greater than 10 percent under this diagnostic code is not warranted in this case. The next higher rating of 20 percent requires at least two weeks of incapacitation prescribed by a physician. In this regard, the Board acknowledges that the May 2006 VA examiner noted that the Veteran has had no periods of incapacitation or difficulty doing his activities of daily living and has never been hospitalized or had bed rest for his neck. The VA examiner in June 2010 also noted there were no incapacitating episodes due to IVDS. Thus, the Veteran is precluded from a rating higher than 10 percent under Diagnostic Code 5243.

In further application of relevant criteria in this case, the Board finds no basis to assign a rating higher than 10 percent for the Veteran's cervical spine disability under Diagnostic Code 5237. The range of motion of the Veteran's cervical spine was tested during the two VA examinations he had in May 2006 and June 2010. The May 2006 VA examination report notes that his cervical spine demonstrated 35 degrees of flexion and extension, right and left lateral flexion to 30 degrees, and left and right rotation to 60 degrees, for a combined range of motion of 190 degrees. The June 2010 VA examination report notes that his cervical spine demonstrated 55 degrees of flexion, 50 degrees of extension, left and right lateral flexion of 30 degrees, left lateral rotation of 45 degrees, and right lateral rotation of 50 degrees, for a combined range of motion of 260 degrees. Further, there was no kyphosis, scoliosis, or reverse lordosis. Examination of the muscles of the cervical sacrospinalis revealed no spasm, atrophy, guarding, pain with motion, tenderness, or weakness. The examiner noted that there was no objective evidence of pain on active range of motion. Nor was there objective evidence of pain following repetitive motion. There were also no additional limitations after three repetitions of range of motion. It was further noted that although the range of motion was reduced, it represented "normal" for the Veteran due to other factors not related to his spine disability. 

In light of these findings, there is no basis to assign a disability rating higher than 10 percent under the General Rating Formula for Diseases and Injuries of the Spine. Both reports show that the Veteran's cervical spine demonstrated flexion greater than 30 degrees, with a combined range of motion greater than 170 degrees. Accordingly, a disability rating higher than 10 percent is not available under the General Rating Formula for Diseases and Injuries of the Spine.

Since there is motion in every direction, there is no indication of favorable or unfavorable ankylosis of the entire cervical spine. In fact, on VA physical examination in June 2010, there was no finding of cervical ankylosis. 

In addition, there is no functional loss due to pain, weakness, fatigability, or incoordination of the cervical spine that would otherwise warrant assigning a higher rating. 38 C.F.R. §§ 4.40, 4.45, and 4.59. See DeLuca, 8 Vet. App. at 204-08. The May 2006 VA examiner noted that additional limitation due to repetitive use or flare-ups could not be determined without resort to mere speculation. However, the June 2010 examiner noted there was no objective evidence of pain on active range of motion; nor was there objective evidence of pain following repetitive motion. There were also no additional limitations after three repetitions of range of motion. He further noted there was no evidence of weakness, fatigability, or incoordination. At that time, the Veteran reported that only pain limited his function. Under these circumstances, there is no basis for a rating higher than 10 percent in light of the factors set forth in 38 C.F.R. §§ 4.40, 4.45, 4.59, and DeLuca. 

Additionally, in the May 2006 VA examination report, it was noted that the Veteran denied symptoms of numbness, weakness, and bladder or bowel dysfunction. However, during the June 2010 VA examination, he described numbness in the ulnar nerve distribution of the left arm. This is significant because Note (1) to the General Rating Formula (DCs 5235-5242) specifies that any associated objective neurologic abnormalities should be separately evaluated under an appropriate diagnostic code. In this case, this would include consideration of whether the disability involves paralysis of the ulnar nerve. 38 C.F.R. § 4.124a, Diagnostic Code 8516. While the Veteran reported some neurologic symptoms, on objective examination in June 2010, the examiner reported there was no motor weakness of the ulnar nerve. Discrimination was decreased in the ring and small fingers, and there was a loss of light touch sensation. Elbow flexion test, where the elbow was flexed for one to two minutes, was positive and reproduced his symptoms. However, Tinel's was negative, and there was no subluxation of the ulnar nerve. 

Disabilities of the ulnar nerve are rated under the criteria of 38 C.F.R. § 4.124a (Diseases of the Peripheral Nerves), Diagnostic Code 8516 (complete or incomplete paralysis), Diagnostic Code 8616 (neuritis) and DC 8717 (neuralgia). The rating criteria for all these Diagnostic Codes are as follows. A rating of 10 percent is awarded for mild incomplete paralysis of the major extremity. A rating of 30 percent is awarded for moderate incomplete paralysis of the major extremity. A rating of 40 percent is awarded for severe incomplete paralysis of the major extremity. A rating of 60 percent is awarded for complete paralysis of the ulnar nerve in the major extremity (with "griffin claw" deformity due to flexor contraction of the ring and little fingers, atrophy very marked in dorsal interspace and thenar and hypothenar eminences; loss of extension of ring and little fingers; cannot spread the fingers or reverse; cannot adduct the thumb; flexion of wrist weakened).

A note to the rating schedule states the term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the "mild" or at most the "moderate" degree. In this case, although there are clinical findings of decreased discrimination in the ring and small fingers, a loss of light touch sensation, and positive elbow flexion test, at a June 2010 VA examination, the Board notes that these neurologic symptoms have been found to be unrelated to the Veteran's cervical spine disability. Specifically, the May 2006 VA examiner found that the Veteran's C8 sensory radiculopathy was more likely than not due to peripheral ulnar neuritis and not related to or caused by his cervical spine disability. Therefore, a separate compensable rating under 38 C.F.R. § 4.124a, DC 8516 is not warranted for any neurological manifestations due to the Veteran's cervical spine disability.

In summary, the Board finds that the preponderance of the evidence is against a disability rating in excess of 10 percent for the Veteran's service-connected degenerative disc disease of the cervical spine. 38 C.F.R. § 4.3. 

III. Other Considerations

Based upon the guidance of the Court in Hart, 21 Vet. App. at 509-510, the Board has considered whether any staged ratings are appropriate for the service-connected disabilities on appeal and find that no staged ratings are warranted in this case.

There also is no suggestion the Veteran's mechanical low back pain and degenerative disc disease of the cervical spine disabilities are so exceptional or unusual as to render impractical the application of the regular rating schedule standards and, instead, warrant the assignment of a higher evaluation on an extra-schedular basis. See 38 C.F.R. § 3.321(b)(1) (2010). The symptoms of his disabilities (e.g., pain) are contemplated by the schedular rating criteria. There is no evidence of hospitalization, much less on a frequent basis. Although the Veteran has alleged that he is not working due to his spine disabilities, the Board notes that this has been contemplated by his schedular ratings of his spine disabilities as well as by his receipt of a TDIU. Under the approach prescribed by VA, if the rating criteria reasonably describe the claimant's disability level and symptomatology, then the assigned schedular rating is not inadequate, and no referral is required. See Thun v. Peake, 22 Vet. App. 111, 115-16 (2008).


ORDER

Entitlement to a disability evaluation in excess of 10 percent for mechanical low back pain is denied.

Entitlement to a disability evaluation in excess of 10 percent for degenerative disc disease of the cervical spine is denied.



____________________________________________
JENNIFER HWA
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs